IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL GUZMÁN-RIVERA

      Plaintiff

      **v.**

KERMIT LUCENA-ZABALA; ZAIDA
CAMACHO-ROSSY; ANABELLE
NUÑEZ-UBARRI; LÁZARO SERRANO-
CID; ZULMARIE URRUTIA-VÉLEZ;
OJEL RODRÍGUEZ-TORRES; PUERTO
RICO EXAMINING BOARD OF
ACCOUNTANTS

      Defendants

**Civil No. 08-1897 (SEC)**

**OPINION and ORDER**

Pending before this Court is Co-Defendants Kermit Lucena-Zabala, Zaida Camacho-Rossy, Anabelle Nuñez-Ubarri, Lázaro Serrano-Cid, and Zulmarie Urrutia-Vélez's (collectively "Defendants") motion to dismiss (Docket # 12), and Plaintiff Miguel Guzmán-Rivera's ("Plaintiff") opposition thereto (Docket # 13). After reviewing the filings, and the applicable law, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

**Factual Background**

On August 13, 2008, Plaintiff filed the instant complaint against Defendants, in their official and individual capacities, under Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Fourteenth Amendment of the U.S. Constitution. Docket # 1. Plaintiff seeks relief for the damages he suffered as a result of the alleged deprivation of his property interests without due process of law. Id. According to the complaint, on February 12, 1998, Plaintiff received a Certified Public Accountant's ("CPA") license. On June 5, 2006, the Puerto Rico Examining Board of Accountants ("the Board") required Plaintiff to submit to an

involuntary practice review,[1] by August 31, 2006. Plaintiff requested that the practice review be postponed until 2007, but the Board denied this request citing a "need for urgency." At Plaintiff's request, the Board scheduled a hearing for October 20, 2006, however, Plaintiff failed to appear due to a scheduling error on his behalf. On November 17, 2006, the Board indefinitely suspended Plaintiff's CPA license. Plaintiff received notice of the suspension on November 27, 2006. Two days later, on November 29, 2007, Plaintiff requested that the Board reconsider its decision, arguing that he had already begun the process of submitting himself to the practice review.

While the Board sent Plaintiff a notice of a hearing scheduled for December 18, 2006, said notice did not contain any information as to the nature or purpose of the hearing, any alleged violations on the part of Plaintiff, his right to attend with counsel, nor did it include information regarding the consequences of his failure to appear.  During the hearing, Plaintiff was informed that the suspension would remain in place until his practice review was presented, for which they set a deadline of January 31, 2007. After several delays, which Plaintiff informed the Board of *via* email, on March 6, 2007, Plaintiff completed the requested practice review. Upon receiving the Puerto Rico Association of Certified Public Accountants' ("PRACPA") approval[2] on July 3, 2007, the practice review was presented to the Board on July 13, 2007.

On August 17, 2007, the Board decided not to lift the suspension on Plaintiff's license, and notified him that another hearing would be held on September 24, 2007. Once again, the notice did not contain any information as to the nature or purpose of the hearing, any alleged violations on the part of the Plaintiff, his right to attend with counsel, nor did it include

---

[1] An examination of Plaintiff's accountancy practice conducted by a reviewing CPA. The reviewing CPA then issues a report regarding his findings.

[2] The practice review process is not conducted by the Board, but by the PRACPA.

information regarding the consequences of his failure to appear. At the second hearing, the contents of the practice review were not discussed, nor did the Board inform Plaintiff of his due process rights. Rather, the Board questioned Plaintiff as to the reasons for the tardiness of his practice review, although, as stated above, Plaintiff had previously provided an explanation for the delays. On October 24, 2007, the Board issued a resolution revoking Plaintiff's CPA license, and stating that he had not followed the standards of the profession. Plaintiff was notified of this resolution on October 27, 2007, and on October 29, 2007, he filed a request for reconsideration, which the Board denied on November 26, 2007.

On December 26, 2007, Plaintiff filed for judicial review before the Puerto Rico Court of Appeals, arguing that the Board suspended, and later revoked his license, in violation of his due process rights. On June 16, 2008, the Puerto Rico Court of Appeals revoked the Board's ruling, and ordered the Board to reinstate the license "immediately and without any kind of delay" pending the "corresponding findings, if any, pursuant to the rulings of this judgment." However, the Court of Appeals allowed the Board to conduct any administrative hearings which they deemed necessary. Docket # 7 at p. 28. The Puerto Rico Court of Appeals also stated that "the Board totally disregarded the procedures required to suspend and revoke a license." Id. at 22. As a result thereof, on June 30, 2008, Plaintiff's CPA license was reinstated.

On November 10, 2008, Defendants filed a motion requesting the dismissal of the case. According to Defendants, all claims against them should be dismissed because: (1) a final administrative decision is still pending, thus the Younger abstention doctrine applies to the case at bar, (2) they are entitled to Eleventh Amendment Immunity in their official capacities, and (3) in their individual capacities, they are entitled to absolute immunity.

### Standard of Review

*FED. R. CIV. P. 12(b)(1)*

FED. R. CIV. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Under this rule, a wide variety of challenges to the Court's subject matter jurisdiction may be asserted, among them those based on sovereign immunity, ripeness, mootness, and the existence of a federal question. Id. (citations omitted). When faced with a similar jurisdictional challenge, this Court must ". . . give weight to the well-pleaded factual averments in the operative pleadings [. . .] and indulge every reasonable inference in the pleader's favor." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir.2007).

A plaintiff faced with a motion to dismiss for lack of subject matter jurisdiction has the burden to demonstrate that such jurisdiction exists. See Lord v. Casco Bay Weekly, Inc., 789 F. Supp. 32, 33 (D. Me. 1992); see also SURCCO V. PRASA, 157 F. Supp. 2d 160, 163 (D. P.R. 2001). However, in order for a plaintiff's claim to be dismissed for lack of subject matter jurisdiction, due to the inadequacy of the plaintiff's federal claim, that claim must be ". . . so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974). In this context, this Court is empowered to resolve factual disputes by making reference to evidence in the record beyond the plaintiff's allegations without having to convert the motion to dismiss into one for summary judgment. See Lord, 789 F. Supp. at 33 (D. Me. 1992); see also SURCCO, 157 F. Supp. 2d at 163 (D. P.R. 2001). "Where a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking evidence and making findings of fact." Hernández-Santiago v.

Ecolab, Inc., 397 F. 3d 30 (1st Cir. 2005). Therefore, the court may consider extrinsic materials, "and, to the extent it engages in jurisdictional fact-finding, is free to test the truthfulness of the plaintiff's allegations." Dynamic, 221 F. 3d at 38. That is, the principle of conversion of a motion to dismiss into a motion for summary judgment when extrinsic materials are reviewed, does not apply in regards to a motion to dismiss for lack of subject matter jurisdiction. Id.

*FED. R. CIV. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[3] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305 (1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d

---

[3] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

29, 33 (1ˢᵗ Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1ˢᵗ Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1ˢᵗ Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1ˢᵗ Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1ˢᵗ Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility  standard is not akin to a 'probability requirement,'but it asks for more than a sheer possibility  that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1ˢᵗ Cir. 2008).

**Applicable Law and Analysis**

*Abstention Due to Pending Administrative Decision*

The Younger abstention doctrine states that federal courts "must abstain from reaching the merits of a case over which it has jurisdiction...[if]...there is (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding...that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal suit." Middlesex County Ethics Comm'n V. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). While Younger originally called on federal courts to abstain from ongoing

state judicial proceedings, it has since been expanded to include abstention from "comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests." <u>Maymó-Meléndez v. Alvarez-Ramírez</u>, 364 F.3d 27, 31 (1st Cir. 2004).

Therefore, this Court must first determine whether there is an ongoing administrative procedure regarding Plaintiff's claim; second, whether those proceedings implicate an important state interest; and third, whether those proceedings provide an adequate opportunity for the Plaintiff to raise the claims advanced in his federal claim.

In regards to the first prong, Defendants argue that there is still an ongoing administrative procedure, instituted when PREBA first contacted the Plaintiff about submitting to a practice review in the summer of 2006. Defendants argue that, since Plaintiff does not claim that the Board's administrative process has concluded, this Court does not have jurisdiction over this suit, pursuant to the <u>Younger</u> abstention doctrine, and dismissal is warranted.  In opposition, Plaintiff argues that, while the Puerto Rico Court of Appeals remanded the case to the Board, and ordered that his license be reinstated, their mandate was limited to questions regarding reinstatement, not damages.  Plaintiff argues that since Defendants did not appeal this decision, or conducted any further administrative hearings, and considering that Plaintiff's license was in fact reinstated, the administrative procedure effectively concluded.

Upon review of the complaint, this Court notes that while Plaintiff admits that the administrative proceedings commenced in the summer of 2006, he does not admit that said proceedings are ongoing. Moreover, itt does not appear that the Board made any further findings nor held any further administrative proceedings regarding reinstatement as allowed to them by the Puerto Rico Court of Appeals' ruling. Docket # 7 at p. 28. Instead, the Board reinstated Plaintiff's license on June 30, 2008. As such, this Court finds that the administrative

proceedings regarding Plaintiff's license reinstatement effectively concluded when Plaintiff's license was reinstated, and no further action was taken by the Board.

Additionally, the claim brought before this Court, seeking money damages for the expanse of time that Plaintiff did not have his license, never was, nor currently is, before the Board's administrative proceedings, since their authority is limited to reinstatement, or denial thereof, of Plaintiff's license. P.R. Laws Ann. tit. 20, § 782. As such, the first prong is not met, and this Court need not abstain from deciding the merits of Plaintiff's federal claims.[4] As such, Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

*Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. Am. XI.

Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See Board of Trustees of the Univ. of Ala. v. Garrett, 121 S. Ct. 955, 962 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. See Jusino-Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v. Toledo Dávila, 175 F.3d 37, 39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado,

---

[4] This Court notes that the second prong of the Younger abstention doctrine is met because there is an important state interest involved in  the administrative proceedings regarding CPA licensing conducted by the Board. However, Defendants fail to satisfy the third prong, since the Board does not have jurisdiction over damages claims, and therefore, they cannot provide an adequate opportunity for the Plaintiff to raise the claims set forth in the present suit.

144 F.3d 7,12-13 (1st Cir. 1998); Culebras Enters. Corp. v. Rivera Ríos, 838 F.2d 506, 516 (1st Cir. 1987); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984).

The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury, and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)). However, Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddy v. P.R.A.S.A., 991 F.2d 935, 938 (1st Cir. 1993). There are four (4) circumstances in which the Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's protection. Id. at 938 (citations omitted). Despite the second of the above mentioned circumstances, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically mean that it has waived its immunity in federal court. See Díaz-Fonseca v. Commonwealth of Puerto Rico, 451 F. 3d 13, 33 (1st Cir. 2006) (holding that although the Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court).

The Eleventh Amendment bar extends to governmental instrumentalities which are an arm or "alter ego" of the State. See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435

(D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974). In addition, the Eleventh Amendment also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity, for monetary relief, is an action for the recovery of money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. Michigan Dept. of State Police, 109 S. Ct. 2304 (1989). Hence, a claim against a state official in her official capacity for monetary relief is, in essence, a claim against the State.

The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or *alter ego* of the state, and thus, entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69. The Puerto Rico Board of Accountancy, and therefore the Board, is an arm or *alter ego* of Puerto Rico pursuant to P.R. Laws Ann. tit. 20, § 773 (2008), which creates "a Board of Accountancy in and for the Commonwealth of Puerto Rico [which] shall consist of five (5) members appointed by the Governor with the advice and consent of the Senate." P.R. Laws Ann. tit. 20, § 773 (2008). As such, this Court need not dwell on this point.

Finally, it is well settled that while the Eleventh Amendment does not preclude claims for prospective equitable relief, it does bar suits for monetary damages against the state, and its officers, in their official capacities. See Ex Parte Young, 209 U.S. 123, 155-56 (1908); Nieves-Márquez v. Commonwealth of Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003).

Based on the foregoing, the Commonwealth of Puerto Rico is entitled to Eleventh Amendment immunity. By like token, this Court finds that the Puerto Rico Board of Accountancy, and therefore the Board, an arm of the Commonwealth, and Defendants in their official capacities, are also entitled to Eleventh Amendment immunity. As such, Defendants' request for dismissal of the claims against them in their official capacities is **GRANTED**.

*Absolute Immunity*

Defendants also argue that they are entitled to absolute immunity in their individual capacities, for the acts they performed as members of the Board. According to Defendants, they engage in quasi-judicial duties which sufficiently resemble those functions that are entitled to absolute immunity. Indeed, "there are some officials whose special functions require a full exemption from liability." Butz v. Economou, 438 U.S. 478, 508 (1978). Specifically, those officials who perform quasi-judicial functions that share "enough characteristics [with] the judicial process...should also be immune from suits for damages." Id. at 512-513. More to the point, the First Circuit has held that members of an administrative board, acting in a quasi-judicial capacity, enjoy absolute immunity from personal liability. Diva's Inc. v. City of Bangor, 411 F.3d 30, 40-41 (1st Cir. 2005).

Therefore, this Court must determine if, "while executing the activities which gave rise to this claim," Defendants, as members of the Board, "were acting in an adjudicatory capacity such that [they] are entitled to absolute immunity." Destek Group, Inc. V. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 41 (1st Cir. 2003). In analyzing whether the members of the Board were performing quasi-judicial functions sufficiently similar to that of a judge so as to entitle them to absolute immunity, this Court must apply a three part test. Bettencourt v. Bd. of Registration In Med. Of Mass., 904 F.2d 772, 783 (1st Cir. 1990). First, this Court must determine if the Board members perform "traditional 'adjudicatory' function[s], in that [they]

decide[] facts, appl[y] law, and otherwise resolve[] disputes on the merits." Id. Second, it is necessary to determine if the "Board member[s], like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, [they] would be subject to numerous damages actions." Id. Third, this Court must determine if the "Board member[s], like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect [an individual's] constitutional rights." Id.

Defendants aver that they are entitled to absolute immunity because (1) as members of the Board, they perform traditional adjudicatory functions; (2) the controversial nature of the decisions made by them in these proceedings expose them to numerous lawsuits; and (3) the right to appeal the Board's decisions *via* judicial review provides a sufficient safeguard to protect an individual's constitutional rights. Plaintiff does not contest that the cases decided by the Board are not sufficiently controversial so as to require absolute immunity to protect the members from numerous lawsuits. Plaintiff does, however, aver that Defendants' actions in presiding over the administrative hearings were of such poor quality, that the first and third elements of this test are not satisfied, thus absolute immunity is inapplicable. Specifically, Plaintiff argues that Defendants' actions were not truly adjudicatory in nature due to their disregard for the provisions that govern the quasi-judicial proceedings.

As members of the Board, when determining whether or not to revoke or reinstate CPA licenses, the Board must review the facts, weigh the evidence, apply the relevant laws and regulations to those facts, and issue a written order. Public Accountancy Act of 1945 ("Accountancy Act"), P.R. Laws Ann. tit. 20, § 782 (2008).[5] These types of traditional

---

[5] Puerto Rico's Uniform Administrative Procedure Act ("LPAU"), P.R. Laws Ann. tit. 3, § 2151 (2008) also ensures the safeguard of an accused's procedural due process rights, guaranteeing the right to be notified of the charges filed, present evidence, among others.

adjudicatory functions satisfy the first element of the above described test. Upon reviewing the LPAU and the Accountancy Act, this Court finds that the allegedly deficient manner in which the members of the Board presided over these administrative hearings is irrelevant, insofar as the tasks they performed were in fact adjudicatory in nature, are functionally comparable to those of a judge, and thus entitles them to the absolute immunity that is vested upon judges.[6] Specifically, any individual before the Board is protected by certain procedural safeguards, including the right to appeal the Board's decision *via* judicial review. In regards to the hearings held before the Board, the Accountancy Act, P.R. Laws Ann. tit. 20, § 782 (2008), states that individuals affected by the Board's decisions have the right to appeal these decisions by seeking judicial review. In this case, Plaintiff exercised such right, and on appeal, his license was reinstated. Therefore, the right to seek judicial review effectively safeguarded Plaintiff's rights from any possible error, or wrongdoing by the Board, and his constitutional rights were adequately protected. Considering the above, this Court finds that Defendants are entitled to absolute immunity in their individual capacities.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is **GRANTED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 1st day of July, 2009.

*S/Salvador E. Casellas*

---

[6] Generally, judges are immune from suits for monetary damages. Mireles v. Waco, 502 U.S. 9 (1991). This immunity applies with full force to actions brought under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 554-555 (1967). Judges therefore enjoy "a comparably sweeping form of immunity." Forrester v. White, 484 U.S. 219, 225 (1988). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978). Procedural errors, even grave ones, do not divest a judge from immunity. Cintrón-Rodríguez v. Pagán-Nieves, 736 F. Supp. 411, 413 (1990).

**CIVIL NO. 08-1897 (SEC)**                                                    **Page 14**

---

Salvador E. Casellas
U.S. District Judge